So Ordered.

Dated: August 24, 2023



Beth E. Hanan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

| | |
|---|---|
| Olayvanh Chounramany, | Case No. 21-21221-beh |
| Debtor. | Chapter 7 |

| | |
|---|---|
| Patrick S. Layng, United States Trustee | |
| Plaintiff, | |
| v. | Adv. No. 22-2059-beh |
| Olayvanh Chounramany | |
| Defendant. | |

**DECISION AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

The debtor-defendant Olayvanh Chounramany seeks judgment dismissing the United States Trustee's complaint for revocation of her discharge under § 727(d)(1) for two reasons. Her primary assertion is that the U.S. Trustee had actual or constructive knowledge of the alleged fraud at the time of her discharge, and so the complaint should fail under the knowledge element of § 727(d)(1). Ms. Chounramany also denies that her failure to disclose return of investment/gift payments was fraudulent. The U.S. Trustee contends he did not know of the alleged fraud until almost a year after the debtor received her discharge, when information came to light in Ms.

Chounramany's boyfriend's bankruptcy case. Because there is a genuine dispute as to whether the U.S. Trustee could have known of Ms. Chounramany's receipt of return of investment/gift monies and also because there are genuine issues of material fact as to whether she fraudulently obtained her discharge, the Court denies Ms. Chounramany's request for summary judgment.

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the July 16, 1984 order of reference in this district, entered under 28 U.S.C. § 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

## FACTUAL BACKGROUND

The following facts are undisputed or established by judicial notice of the Court's docket. On March 10, 2021, Ms. Chounramany filed a Chapter 7 petition. Case No. 21-21221, ECF No. 1. She listed her primary employment with Derco and her part-time employment with Pacific Bistro (a restaurant owned by her boyfriend). On her Statement of Financial Affairs (SOFA), she reported a 401(k) retirement account withdrawal. *Id.* at 40. She listed one loan receivable, from her aunt in the amount of $700. *Id.* at 15. Ms. Chounramany testified at her April 12, 2021, meeting of creditors that her schedules were true and accurate. ECF No. 1, at 3; ECF No. 6, at 2.

Before and after her meeting of creditors, the U.S. Trustee sent several email inquiries to Ms. Chounramany's counsel seeking clarification of the debtor's disclosures and asking for bank statements and tax returns. *See, e.g.*, ECF No. 24-1, dated March 17, 2021. On April 27, 2021, the U.S. Trustee questioned some non-payroll deposits into Ms. Chounramany's bank account. ECF No. 24-4. Her bank statements showed that in 2019, 2020, and 2021 there were almost $160,000 in deposits unrelated to her primary employment with Derco. ECF No. 24-5. Responding to the U.S. Trustee, Ms. Chounramany

stated through counsel that her boyfriend[1] had deposited his pay checks into her account because he did not have a bank account. ECF No. 24-6. She explained also that she had received net proceeds after selling her condominium, and later used those funds as part of a down payment on her current house. In addition, she received $15,000 from her parents, to add to her down-payment. *Id.* Some deposits came from her divorce settlement, from reimbursements from her father, from her ex-husband, and from her boyfriend, and included the previously reported 401(k) withdrawal. *Id.* To supplement her response, Ms. Chounramany prepared a spreadsheet for the U.S. Trustee identifying certain deposits related to her second job at Pacific Bistro. Those deposits totaled $38,699 in 2019 and $15,415 in 2020. ECF No. 24-3.

On May 26, the U.S. Trustee asked Ms. Chounramany why Pacific Bistro had made a number of payments to her in 2020 in round dollar amounts[2] appearing to be non-wage income. ECF No. 24-8. She replied through counsel that these deposits were intended to reimburse her for expenses she incurred on behalf of the restaurant and to compensate her for her new role in helping the restaurant adapt to changing business needs during the pandemic. ECF No. 24-9, at 2. She added that the restaurant had chosen to designate these payments as investment returns, presumably for tax avoidance purposes. *Id.* Ms. Chounramany believed that she was not required to report on her Statement of Financial Affairs the receipt of these untaxed monies from Pacific Bistro, ECF No. 23-1, at 4, notwithstanding that the SOFA instructions required her to "[i]nclude income regardless of whether that income is taxable." Case No. 21-21221, ECF No. 1, at 40.

---

[1] The U.S. Trustee asserts that Ms. Chounramany did not disclose the name of her boyfriend to the U.S. Trustee during the course of her bankruptcy case. ECF No. 24, at 3 n.3. But the debtor did identify Ackasone Virasith as part of her household, in response to the U.S. Trustee's initial inquiry of March 17, 2021. *See* ECF No. 24-3, at 3.

[2] Reviewing the spreadsheet prepared by Ms. Chounramany, the U.S. Trustee detected four such payments, one on March 3, 2020 for $2,500, and three for $1,500 on May 26, June 4, and September 24, 2020, totaling $7,000 in all. ECF No. 24-7.

In her response to the U.S. Trustee, Ms. Chounramany also acknowledged that eight or nine years earlier she had given her boyfriend about $24,000 to help the restaurant, but she believed this sum was unrecoverable. ECF No. 24-9, at 2–3. She kept no record of the funds she gave to her boyfriend. *Id.*

Based on Ms. Chounramany's responses to each of the U.S. Trustee's inquiries, the U.S. Trustee concluded his investigation. ECF No. 1, at 4. Just before closing the investigation, an internal U.S. Trustee email stated: "Thanks for passing along Bruce's responses. The answers appear adequate except for the fact that she reports on SOFA she had no cash on hand. Clearly, she has a propensity to transact in cash, and it would seem likely she did have a reportable amount of cash that was not disclosed. While this many not impact the outcome (amount may be exempt), it does not demonstrate full transparency." ECF No. 24-9.

Ms. Chounramany received her discharge on June 14, 2021.

On February 18, 2022, Ms. Chounramany's boyfriend, Ackasone Virasith, filed his own Chapter 7 petition. *See* Case No. 22-20615. As owner of Pacific Bistro, Virasith provided the U.S. Trustee with information concerning the financial condition of the restaurant. One such document purported to show that, in addition to wages Ms. Chounramany earned while working at the restaurant, Virasith made payments to her totaling $74,500 between February 2020 and August 2021. ECF No. 23-6, at 1. Virasith also provided a document purporting to show amounts totaling $80,000, which Ms. Chounramany gave him from 2010 to 2014 for restaurant startup costs. ECF No. 23-5, at 1. The latter document bears the handwritten heading: "Loan Agreement Between Olayvanh Chounramany (Fon) and Pacific Bistro, LLC – No interest. Fon said pay back whenever PB has money."

The U.S. Trustee, having recognized Ms. Chounramany's name in Virasith's papers, filed a motion to reopen Ms. Chounramany's bankruptcy case and then filed this adversary proceeding to revoke her discharge pursuant to 11 U.S.C. § 727(d)(1). The complaint alleges that Ms. Chounramany falsely

attested to the accuracy of her schedules because she did not disclose all of her income or assets, and that the U.S. Trustee did not learn of these omissions until after her discharge.[3] As part of discovery, the U.S. Trustee took Ms. Chounramany's deposition. The questioning included:

> Q. Did you tell [your bankruptcy attorney] Mr. Lanser that you received $44,000 return of capital before you filed for bankruptcy?
>
> A. No. I didn't even realize it. He didn't ask, and I didn't even – I didn't even realize that I was – you know, that I have to tell him because it's not part of my income, and he didn't ask.

ECF No. 24-15, at 3.

Ms. Chounramany also submitted an unsworn declaration dated May 31, 2023. ECF No. 23-1. Therein she describes her participation in her underlying bankruptcy case, including her process of supplying information to her counsel to forward to the U.S. Trustee. Paragraph 13 of her declaration states:

> In response to one of Attorney Cramer's inquiries about non-payroll checks that I had received from Pacific Bistro, LLC, I explained to Attorney Lanser that about 8 or 9 years earlier I had given money to Ackasone Virasith to help his business, a restaurant named Pacific Bistro LLC. I also explained that Pacific Bistro, LLC was returning those funds to me.

## ANALYSIS

Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). A factual dispute is genuine, and summary judgment therefore is inappropriate, "if the evidence is such that a reasonable jury could

---

[3] The U.S. Trustee acknowledges in the complaint that he was awaiting more information from the Virasith bankruptcy to determine the amount Ms. Chounramany failed to report, and initially attributed the fraud to unreported *wages*. ECF No. 1, at 5, 8. On summary judgment, the U.S. Trustee has narrowed the dispute to *non*-wage receipts from Pacific Bistro. ECF No. 24, at 2.

return a verdict for the nonmoving party." *Id.* at 248. On the other hand, where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At the summary judgment stage, the Court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is something to try – "whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. In reviewing the evidence, the Court must draw all reasonable inferences in the light most favorable to the non-moving party. *See Cont'l Casualty Co. v. Nw. Nat. Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021).

A party seeking revocation of a discharge under § 727(d)(1) must file his or her complaint within one year after the discharge issues. 11 U.S.C. § 727(e)(1). Revocation is an extraordinary remedy, and discharge revocation provisions are construed in favor of the debtor. *Layng v. Mack (In re Mack)*, Case No. 16-2304-svk, Adv. No. 16–02304, 2017 WL 1380485, at *1 (Bankr. E.D. Wis. April 17, 2017) (citing *In re Juzwiak*, 89 F.3d 424, 427 (7th Cir. 1996)). To succeed in an action to revoke a discharge, the U.S. Trustee must prove two elements by a preponderance of the evidence: (1) that the debtor's discharge was procured by fraud; and (2) that the U.S. Trustee lacked knowledge of the fraud prior to the discharge. 11 U.S.C. § 727(d)(1); *see also State Bank of India v. Kaliana (In re Kaliana)*, 202 B.R. 600, 603–04 (Bankr. N.D. Ill. 1996). The first element requires a showing that "the debtor knowingly intended to defraud the trustee . . . or engaged in such reckless behavior as to justify the finding of fraud." *Rezin v. Barr (In re Barr),* 207 B.R. 160, 176

(Bankr. N.D. Ill. 1997). Omission of bankruptcy estate assets from the schedules and subsequent trustee discovery may warrant revocation of a discharge, but only if the court is able to discern sufficient intent to defraud, or recklessness. *See Schechter v. McAniff (In re McAniff),* Case No. 03 A 4407, Adv. Nos. 03 A 4407 & 03 A 4408, 2004 WL 1146699, at *4 (Bankr. N.D. Ill. May 21, 2004); *In re Yonikus,* 974 F. 2d, 901, 905 (7th Cir. 1992) (direct evidence or an inference of fraudulent intent is required).

As to the second element, revocation under § 727(d)(1) requires that the plaintiff-objector lack knowledge of the alleged fraud prior to entry of a discharge. Lack of actual knowledge is insufficient; instead, the plaintiff must show that he "'did not know and could not have known of the fraud . . . .'" *Goldstein v. Zilberbrand (In re Zilberbrand),* 602 B.R. 53, 57 (Bankr. N.D. Ill. 2019) (quoting *McAniff,* 2004 WL 1146699, at *4). Failure to meet this burden "is fatal to the party's case." *Murietta v. Fehrs (In re Fehrs),* 391 B.R. 53, 80 (Bankr. D. Idaho 2008) (internal quotation marks omitted).

**A.    There is a genuine dispute as to whether the U.S. Trustee could have known about the alleged fraud prior to Ms. Chounramany's discharge.**

Ms. Chounramany devotes most of her argument on summary judgment to the second element of 11 U.S.C. § 727(d)(1)—whether the U.S. Trustee knew or could have known of the alleged fraud before discharge—and so the Court addresses that element first. Ms. Chounramany asserts that the U.S. Trustee knew of at least some of the Pacific Bistro/Virasith repayments before entry of her discharge. She argues that she disclosed to the U.S. Trustee, albeit belatedly, that the $7,000 from Pacific Bistro was a "return of money that she had given to Virasith years ago to help him with his restaurant." ECF No. 23, at 8. On summary judgment it matters not, says Ms. Chounramany, whether she disclosed the full amount returned to her because the U.S. Trustee, a sophisticated actor in the bankruptcy system, was aware of facts sufficient to decide whether to take action before entry of the discharge. Ms. Chounramany likens the U.S. Trustee's knowledge here to the awareness of creditors in *Rice,*

*Heitman & Davis, S.C. v. Sasse (In re Sasse),* 438 B.R. 631, 640 (Bankr. W.D. Wis. 2010), and *In re Fehrs,* 391 B.R. at 80-81. ECF No. 23, at 8-9.

The U.S. Trustee counters that before discharge, he was told the $7,000 was for reimbursement of expenses and payment for Ms. Chounramany's additional duties at the restaurant. ECF No. 24, at 3–4. In his brief, the U.S. Trustee acknowledges being told that Pacific Bistro "coded" the $7,000 payments as returned investments, and also being told that eight to nine years earlier, Ms. Chounramany had given her boyfriend money to "help prop up" his restaurant, Pacific Bistro. The U.S. Trustee's brief recounts that Ms. Chounramany's bankruptcy counsel had stated the loan or gift to her boyfriend was not documented, and there was no basis to pursue recovery. *Id.* at 4. The U.S. Trustee's brief then states: "In short, the United States Trustee understood Pacific Bistro paid the Defendant $7,000 for, 1) new work performed, 2) reimbursement of expenses she paid on behalf of the business, and 3) repayment of money she gave to Virasith." *Id.*

The U.S. Trustee attributes his lack of knowledge of the $74,500 in repayments to the fact that Ms. Chounramany did not disclose receipt of them and that she avoided depositing these checks into her bank account, instead cashing them at grocery stores or transferring them to her mother. ECF No. 24, at 2, 4. Ms. Chounramany admitted at her January 6, 2023 deposition that she had not told her bankruptcy counsel about receiving $74,500 in "non-income" from Pacific Bistro, because he didn't ask. ECF No. 24-15, at 3.

Ms. Chounramany cites several cases discussing the actual knowledge of the movant. *See, e.g., In re Fehrs,* where the court found the objecting creditor would have known of debtor Fehr's false oath pre-discharge. This finding was based on the creditor's review of the bankruptcy schedules plus his own knowledge of other assets or transfers not listed, due to his close relationship with the debtor. 391 B.R. at 81–82. In *Mid-Tech Consulting, Inc. v. Swendra,* 938 F.2d 885 (8th Cir. 1991), the objecting creditor knew, before discharge, of property the debtors had omitted from their bankruptcy schedules. The

creditor contended that the fraud itself was not knowable until after discharge, when the debtors mortgaged the undisclosed property. But the bankruptcy court concluded that dismissal of the § 727(d)(1) action was proper where the objecting party knows facts which put him on notice of possible fraud. 938 F.2d at 888. In *Sasse*, 438 B.R. at 639–41, the creditor knew pre-discharge that the debtor had a live-in girlfriend but waited until after discharge to assail the debtor's means test as fraudulent due to shared household income and expenses. And in *Lightfoot v. Landry (In re Landry)*, 350 B.R. 51 (Bankr. E.D. La. 2006), the Chapter 7 trustee failed, pre-discharge, to act upon receipt of an anonymous letter alleging undisclosed assets. The bankruptcy court held that the letter provided sufficient information to provoke an inquiry into the debtor's fraudulent conduct, and therefore granted summary judgment for the debtor on the knowledge element.

Those cases address the movant's actual knowledge of undisclosed assets. But here there is no real dispute that the U.S. Trustee lacked actual knowledge, before discharge, of the $74,500 in payments from Virasith/Pacific Bistro to Ms. Chounramany. Those payments never were deposited into Ms. Chounramany's bank account and she told the U.S. Trustee any money she had given her boyfriend was not recoverable. At that time, Ms. Chounramany explained the $7,000 as repaying her for out-of-pocket expenses and for additional work she undertook. The question on summary judgment is whether the U.S. Trustee could have known of the $74,500 return on investment/gift payments before closing his inquiry and allowing the case to proceed to discharge.

In assessing a plaintiff's constructive knowledge, courts have explained that "the objector need not be aware of all facts of the fraud before the discharge." *Kaliana,* 202 B.R. at 604 (citing *Mid-Tech,* 938 F.2d at 887–88). If the objector could have known of possible fraud, he or she has an affirmative duty to investigate diligently before the discharge issues. *Id.* at 604.

One court addressed both actual and constructive knowledge claims. In *Gebhardt v. Thompson (In re Thompson)*, 561 B.R. 581 (Bankr. N.D. Ga. 2016), the debtors moved for summary judgment on the § 727(d)(1) complaint, asserting that the U.S. Trustee had pre-discharge notice of the alleged fraud. The court recognized that the U.S. Trustee could not show merely that he was uncertain whether fraud was occurring, but instead had the burden to show he was not aware of facts that would suggest even possible fraud. *Id.* at 590–91. The court granted summary judgment for the debtors on claims related to hoarding of cash, misstatements on financial reports and a gutted property, because the U.S. Trustee had actual knowledge of facts relating to those three activities. But the *Thompson* court denied summary judgment as to whether the U.S. Trustee had pre-discharge knowledge of unscheduled personal property belonging to the debtor-husband, because that unscheduled property was first disclosed at a post-discharge deposition. *Id.*

Ms. Chounramany contends that the U.S. Trustee had sufficient information to provoke additional investigation to determine the truthfulness of her schedules and SOFA. She also suggests that the U.S. Trustee could have sought an extension of time to continue his investigation and delay discharge. ECF No. 23, at 9.

Drawing all reasonable inferences in favor of the non-movant, the Court concludes that there is a genuine dispute as to whether the U.S. Trustee could have known of the alleged fraud—failure to disclose $74,500 in return on investment/gift payments—before Ms. Chounramany obtained her discharge. Ms. Chounramany's explanations have not been consistent, pre- and post-discharge. But most significant for the present analysis is that before the U.S. Trustee concluded his investigation, Ms. Chounramany had denied receipt of any monies which she considered to be return on investment or return of gift funds. The record evidence—emails between the debtor's bankruptcy counsel and the U.S. Trustee's office—show that Ms. Chounramany herself attributed the $7,000 to expense reimbursement and payment for additional services

*only,* even though she acknowledged that *the restaurant* had coded the payment as "return on investment." Further delineating the distinction, Ms. Chounramany informed the U.S. Trustee that she had given her boyfriend approximately $24,000 but had no expectation that those monies would be recovered. It was only at her post-discharge deposition that she explained she did not disclose to her bankruptcy counsel any untaxed payments beyond the $7,000, because he didn't ask. In short, this case is most like the *Thompson* case, where the court denied summary judgment because the U.S. Trustee only learned of the undisclosed property at a post-discharge deposition. An extension of time to continue the investigation was not required, because the debtor had provided definitive responses.[4]

There is a red herring among the parties' filings. Both parties' briefs depict Ms. Chounramany as explaining that part of the $7,000 that Pacific Bistro paid to her was for return on investment. *See* ECF No. 23, at 8; ECF No. 24, at 4, 8–9. These depictions undergird Ms. Chounramany's argument that if the U.S. Trustee did not consider the $7,000 in late-disclosed receipts to be fraudulent, then any later-discovered similar receipts cannot be fraudulent.[5] But the parties' characterizations in their briefs are not evidence. *Layng v. Tahseen (In re Tahseen),* 650 B.R. 883, 902 (Bankr. N.D. Ill. 2023) (citing *Mitze v. Colvin,* 782 F.3d 879, 882 (7th Cir. 2015) (explaining that "briefs are not evidence, nor in this case based on evidence.")). The source of those characterizations may be the conflicting evidence Ms. Chounramany offered post-discharge. While she testified at her January 6, 2023, deposition that she

---

[4] Of course, "definitive" is a relative concept here, where the debtor operated in part on a cash basis, avoiding bank deposits. As one court noted, "[c]redibility is often the key in determining the sufficiency of a debtor's explanation for . . . failing to keep any meaningful financial records." *Int'l Speedway Corp. v. Rand (In re Rand),* Case No. 6:16-BK-05323-KSJ, Adv. No. 6:17–ap–00009–KSJ, 2018 WL 1801224, at *4 (Bankr. M.D. Fla. April 12, 2018). During the pre-discharge investigation phase, the U.S. Trustee routinely assesses the credibility of a debtor's responses.

[5] In making this argument, Ms. Chounramany's brief ignores the U.S. Trustee's pre-discharge reasoning that if she had a reportable sum of cash on hand that she failed to disclose, it likely was exempt. ECF No. 24-9, at 1.

never told Mr. Lanser that she received return of capital before she filed for bankruptcy (*see* ECF No. 24-15, at 3), her May 31, 2023, declaration states: "I explained to Attorney Lanser that about 8 or 9 years earlier I had given money to Ackasone Virasith to help his business, a restaurant named Pacific Bistro, LLC. *I also explained that Pacific Bistro was returning those funds to me.*" ECF No. 23-1 (emphasis added).

Focusing on the evidence as to what the U.S. Trustee could have known pre-discharge, the record manifests a genuine issue as to whether the U.S. Trustee could have known that Ms. Chounramany had received but failed to disclose $74,500 in return on investment/gift payments. Accordingly, the Court will deny Ms. Chounramany's motion for summary judgment on this element.

**B.     There are genuine issues of material fact as to the fraud element of 11 U.S.C. § 727(d)(1).**

As noted, the parties' summary judgment briefs primarily discuss the knowledge element of the U.S. Trustee's § 727(d)(1) claim. Nonetheless, Ms. Chounramany also contends that she did not obtain her discharge via fraudulent conduct. Because the U.S. Trustee accepted Ms. Chounramany's belated disclosure and explanation of why Virasith/Pacific Bistro repaid her $7,000, her counsel relies on the U.S. Trustee's failure to seek denial of discharge as resolving this second element—essentially urging, "if it wasn't fraud then, it can't be fraud now." *See* ECF No. 25, at 4. The U.S. Trustee does not concede the point.

Neither party's briefing discusses any legal authority to support their positions on the fraud element of § 727(d)(1). *See, for example, Neary v. Mosher (In re Mosher),* 417 B.R. 772, 782 (Bankr. N.D. Ill. 2009) (finding that debtor had a duty to report income he categorized as loan repayments on his bankruptcy schedules); *Rosenberger v. Gallagher (In re Gallagher),* Case No. 14-1236, Adv. No. 14-01236-ABA, 2016 WL 4989942, at *6-7 (Bankr. D.N.J. Sept. 9, 2016) (ruling loan repayments are part of a debtor's gross income and qualify as income under the Bankruptcy Code); *McAniff,* 2004 WL 1146699, at

*4 (denying Chapter 7 trustee's motion for summary judgment because "a fact finder could just as reasonably infer that the debtor acted, not with fraudulent intent, but out of ignorance or ineptitude").

In light of at least a brief survey of the relevant law, and because there is a genuine dispute as to Ms. Chounramany's intent in failing to disclose the $74,500 in return of investment/gift payments as described in the Virasith bankruptcy, the Court will deny summary judgment on the second element and will set the matter for trial.

## CONCLUSION AND ORDER

Based on the discussion above, the Court hereby orders:

1. Ms. Chounramany's motion for summary judgment is DENIED.

2. This matter will proceed to trial in the manner prescribed in the Court's April 13, 2023 order, except that the date originally set for trial, **September 13, 2023**, will now be a telephonic pre-trial conference, at **10:00 AM**, at which time a new trial date will be set. To appear by telephone, the parties must dial 1-888-808-6929 and enter passcode 9122579# before the scheduled hearing time.

#####